15/11-2806.WK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Traci Haskell, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | NO: 11 CV 7727 |
| ) | |
| Cook County Housing Authority ) | |
| an Illinois municipal corporation, ) | |
| ) | Judge Thomas M. Durkin |
| ) | |
| Defendant. ) | |

**DEFENDANT HOUSING AUTHORITY OF THE COUNTY OF COOK'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant, HOUSING AUTHORITY OF THE COUNTY OF COOK, by and through one of its attorneys, DEBORAH A. OSTVIG of JUDGE, JAMES & KUJAWA, LLC, pursuant to Federal Rule of Civil Procedure 50(a)(2), hereby prays that this Honorable Court grant its Motion for Judgment as a Matter of Law, on the basis that there exists no facts to support Plaintiff's retaliation claims:

**STANDARD OF LAW**

*Motion for Judgment as Matter of Law*

When considering a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the nonmoving party and ascertain whether their exists any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed. *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 545 (7th Cir. 1997). A mere scintilla of evidence is not enough. *Willis*, 118 F.3d at 545.

**STATEMENT OF FACTS**

Plaintiff's was hired as an asset/property manager at the Housing Authority of the County of Cook ("HACC") in October 2010 as an at-will employee. Plaintiff's job duties entailed overseeing three HACC properties, two "project" properties and one senior housing facility. When Ms. Haskell first began working at the HACC, her direct supervisor was Dennis Rhoades. Shortly thereafter, Mr. Rhoades was terminated and Mr. Paul Pennock, Director of Asset Management at the HACC, and Jessica Moeller, Assistant Asset Director of the north-side properties, became Ms. Haskell's direct supervisors.

*December 14, 2010 South-Side Property Managers Meeting*

On December 14, 2010, Mr. Pennock held a meeting with all the south-side property managers, including Ms. Haskell. Sometime during the course of the December 14, 2010 meeting Mr. Pennock used the word "ghetto" in a way that allegedly offended Ms. Haskell. Although she was allegedly offended by Mr. Pennock's comment, Ms. Haskell did not report the "ghetto" comment to the HACC's Director of Human Resources, Doris Stephenson, until three weeks after the incident and only reported Mr. Pennock's "ghetto" comment to Ms. Stephenson because she was tired of Mr. Pennock "throwing her under the bus."

Subsequently, Director Stephenson initiated an investigation into Plaintiff's claim. During the course of Human Resource's investigation into the "ghetto" comment or even after the investigation, Plaintiff was not treated any differently by Mr. Pennock. Plaintiff was not demoted from her position, she was not given additional tasks, Mr. Pennock was friendly towards Plaintiff and willing to help Plaintiff, and Plaintiff's interactions with Mr. Pennock were not antagonistic, but cordial. In fact, her relationship with Mr. Pennock continued as it had before the investigation, everything was *status quo*.

*Plaintiff's Direct Report Changes from Mr. Pennock to Ms. Newson to Ms. Gee*

Although things between Plaintiff and Mr. Pennock were *status quo*, in approximately March 2011, the HACC decided that Plaintiff was to report directly to the HACC's Executive Director, Lorri Newson. During the time Plaintiff reported to Ms. Newson, Plaintiff's relationship with Mr. Pennock was *status quo*, even cordial. Subsequently, Plaintiff's direct report changed again to Michelle Gee, also an African American woman. Ms. Gee was Plaintiff's direct supervisor. There was no retaliatory conduct towards Plaintiff during the time she reported to Michelle Gee.

*Plaintiff's Work Performance*

Prior to and while supervising Plaintiff, Ms. Gee noted that Plaintiff's work performance lacked in several areas. Plaintiff's professionalism was lacking and she was unable to manage her properties well. Ms. Gee also found that Plaintiff had difficulties with her interactions with others, had a bad attitude, used profane language in the work place, and was unable to correctly prepare reports. Ms. Gee had repeated informal conversations with Plaintiff regarding her sub-par work performance, but Plaintiff's work performance did not improve. Ms. Gee was not alone in her observations of Plaintiff's work performance issues, Ms. Stephenson, the Director of Human Resources of the HACC at the time also knew and noted that Plaintiff had performance issues.

*Ms. Gee's Decision to Terminate Plaintiff*

Ms. Gee, as Plaintiff's direct supervisor, decided she either needed to give Plaintiff a written warning or terminate Plaintiff. It was Ms. Gee's responsibility and decision as the Assistant Director of Asset Management of the south-side properties to decide and carry out her decision to either warn or terminate Plaintiff.

3

To determine whether to write a written warning or terminate Plaintiff, Ms. Gee considered Plaintiff's work performance, reviewed her own interactions and conversations with Plaintiff, emails she received from other departments about Plaintiff and Plaintiff's reports. Ms. Gee also spoke with her superiors regarding whether to terminate Plaintiff.

Ms. Gee determined that despite repeated informal conversations with Plaintiff about her performance, Plaintiff's work performance wasn't going to improve. Thus, Ms. Gee decided to terminate Plaintiff.

Ms. Gee prepared and executed the Corrective Counseling Form terminating Ms. Haskell. Ms. Gee indicated on the Corrective Counseling Form that Plaintiff "failed on several occasions to handle situations as they arrived at her property in a competent and efficient manner" and delineated several reasons for Plaintiff's termination including: (1) Plaintiff's mismanagement of one of her property's demolition; (2) Complaints from employees and residents regarding how Plaintiff communicated with them; (3) Plaintiff's failure to mitigate emergencies in a timely manner; (4) Plaintiff's failure to accurately and professionally complete reports and paperwork; and (5) Plaintiff's non-responsiveness to a vendor's requests and concerns. Mr. Pennock did not execute the Corrective Counseling Form and nowhere on the form does it state Mr. Pennock initiated Plaintiff's termination.

*Meeting with Plaintiff on July 8, 2011*

On July 8, 2011, Ms. Gee and Ms. Stephenson met with Plaintiff in her office and gave Plaintiff the Corrective Counseling Form terminating her employment. Mr. Paul Pennock was not present at the July 8, 2011 meeting terminating Plaintiff's employment. Through the course of the two hour termination meeting, Plaintiff became irate and belligerent, yelling and swearing at Ms. Gee as Ms. Gee attempted to explain the reasons Plaintiff was being terminated. To diffuse

4

the situation, Ms. Stephenson took over the conversation telling Plaintiff that the termination wasn't personal, but a business decision. At the end of the meeting, Plaintiff refused to sign the Corrective Counseling Form and left the premises.

## ARGUMENT

**I. THIS COURT SHOULD GRANT HACC'S MOTION FOR JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF HAS PRESENTED NO EVIDENCE THAT RETALIATION WAS THE DETERMINING FACTOR IN HER TERMINATION.**

In a retaliation matter, the Court must determine whether the plaintiff provided sufficient evidence that a rational jury could conclude that retaliation was the determining factor in the defendant's decision to terminate plaintiff from her position. *Mathur v. Bd. of Trustees of Southern Illinois University*, 207 F.3d 938, 942 (7th Cir. 2000).

***Plaintiff Presents No Evidence to Establish A Causal Connection Between Plaintiff's Termination and The "Ghetto" Comment.***

Plaintiff has put forth no evidence that there is a causal connection between her termination and Plaintiff reporting Mr. Pennock's alleged offensive "ghetto" comment. In other words, Plaintiff has put forth no evidence that Ms. Gee's decision to terminate Plaintiff was made for a prohibited reason or that Mr. Pennock directed Ms. Gee to terminate Plaintiff because she reported his "ghetto" comment to Human Resources. *See, Jajeh v. County of Cook*, 678 F.3d 560, 571 (7th Cir. 2012) ("plaintiff must prove that the decision maker, *i.e.,* the person responsible for the contested decision, has acted for a prohibited reason).

The record establishes that it was Ms. Gee's decision alone to terminate Plaintiff. Ms. Gee went through the process of evaluating Plaintiff's work performance to determine if Plaintiff's work performance would improve. At the end of her evaluation, Ms. Gee weighed whether she

5

should give Plaintiff a formal written warning or terminate her. Ms. Gee turned to her supervisors for counsel to help her determine whether to warn or terminate Ms. Haskell. None of Ms. Gee's superiors at the HACC directed her to terminate Plaintiff. Her supervisors counseled with her and stated they would support whichever decision Ms. Gee made. Ms. Gee then created the Corrective Counseling Form listing several legitimate reasons for Plaintiff's termination.

### *Plaintiff Presents No Evidence that the HACC's Decision was Pretextual*

A pretext is a deliberate falsehood. An honest mistake, however dumb, is not pretextual, and if there is no doubt that it is the real reason, it blocks the case at the summary judgment stage. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). To show pretext, the plaintiff must show more than that the defendant's decision was "mistaken", ill-considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown. *Kodl v. Board of Education of School District 45*, 490 F.3d 558, 562 (7th Cir. 2007). With respect to pretext, "the question is never whether the employer is mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason". *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007). Thus, even if the employer's reasons for the action were mistaken, ill-considered or foolish, so long as the employer honestly believed those reasons, pretext has not been shown, and summary judgment is appropriate. *See, Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000); *Ellis v. United Parcel Service*, 523 F.3d 823, 828 (7th Cir. 2008).

Here, the record supports that Plaintiff's work performance did not meet the HACC's legitimate expectations. She was unprofessional, demonstrated an inability to manage her properties and an inability to work with the residents at those properties. Plaintiff's failure to meet the HACC's legitimate expectations are memorialized in the subject Corrective Counseling

Form.

The evidence establishes that Ms. Gee, through a careful and systematic process, made the determination to terminate Plaintiff due to her poor performance, a legitimate business reason. Additionally, Plaintiff has presented no evidence that Mr. Pennock directed Ms. Gee to terminate Plaintiff for a prohibited reason or that Ms. Gee's reasons for terminating Plaintiff are pretextual.

As such, based on all the above, this Court should grant the HACC's Motion for Judgment as a Matter of Law.

WHEREFORE, HOUSING AUTHORITY OF THE COUNTY OF COOK, respectfully prays that this Honorable Court grant its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a)(2).

Respectfully Submitted,

s/*Deborah A. Ostvig*
DEBORAH A. OSTVIG, Atty No. 628 7031
JUDGE, JAMES & KUJAWA, LLC
One of the Attorneys for Defendants,
HOUSING AUTHORITY OF THE COUNTY OF COOK

JUDGE, JAMES & KUJAWA, LLC
422 N. Northwest Highway, Suite 200
Park Ridge, Illinois 60068
847/292-1200
847/292-1208 (fax)

**CERTIFICATE OF SERVICE OF DOCUMENTS BY ELECTRONIC MEANS**

The undersigned, an attorney, hereby certifies she caused a copy of the foregoing **Defendant Housing Authority of the County of Cook's Motion for Judgment as a Matter of Law** to be served via electronic filing and hand delivery upon:

> David L. Lee
> Law Offices of David L. Lee
> 53 W. Jackson Blvd., Suite 505
> Chicago, IL 60604
> d-lee@davidleelaw.com

on December 11, 2013.

Respectfully Submitted,

s/*Deborah A. Ostvig*
DEBORAH A. OSTVIG, Atty No. 628 7031
JUDGE, JAMES & KUJAWA, LLC
One of the Attorneys for Defendants,
HOUSING AUTHORITY OF THE COUNTY OF COOK

**JUDGE, JAMES & KUJAWA, LLC**
**422 NORTH NORTHWEST HIGHWAY**
**SUITE 200**
**PARK RIDGE, ILLINOIS 60068**
**(847) 292-1200**
**(847) 292-1208 (fax)**